**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
EDDIE PRATTS,                      :
                                   :
          Plaintiff,               : Civil Action No. 06-1757 (JAP)
                                   :
     v.                            :      O P I N I O N
                                   :
HUDSON COUNTY CORRECTIONAL         :
CENTER, et al.,                    :
                                   :
          Defendants.              :
_____:
```

**APPEARANCES:**

    EDDIE PRATTS, Plaintiff pro se
    # 169-291
    Hudson County Correctional Center
    B-3-West
    35 Hackensack Avenue
    Kearny, New Jersey  07094

**PISANO**, District Judge

    Plaintiff, Eddie Pratts ("Pratts"), is a state inmate currently confined at the Hudson County Correctional Center in South Kearny, New Jersey, at the time he submitted this Complaint for filing.  He seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915.  Based on his affidavit of indigence and six-month account statement, the Court grants Pratts' application to proceed in forma pauperis and directs the Clerk of the Court to file the Complaint without pre-payment of the filing fee.

Having reviewed the Complaint to identify cognizable claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review. In his Complaint, Pratts asserts a conditions of confinement claim, as well as an interference with the mail claim and a denial of access to the courts claim with respect to the lack of legal assistants in the jail law library.  The named defendants are: the Hudson County Correctional Center ("HCCC"); Director Oscar Aviles; and Deputy Director Eric Roberts.

Plaintiff first alleges a conditions of confinement claim, claiming that the quality of the water in the Hudson County Correctional Center ("HCCC") is environmentally unsafe and is unfit for human consumption and use (bathing, brushing teeth, etc.).  Plaintiff complains that the water tastes and smells bad, and that it causes rashes and minor skin irritations and infections when used for bathing and showers.  Pratts also alleges that he was not provided heat during the winter months and was given only one sheet and a thin blanket to keep warm. The jail facility is overcrowded at over 150% capacity.  Inmates are housed in general population in these overcrowded conditions despite infectious and contagious diseases, such as HIV,

Hepatitis C, etc. There are inadequate cleaning supplies for the inmates to clean their cells, floors and walls where they sleep and eat. In addition, food does not meet basic nutritional needs and is served in unsanitary conditions.

Plaintiff further alleges that the officials at HCCC do not honor certified mail which interferes with their legal mail and access to the courts. Further, there are no legal assistants in the law library to help inmates with their legal research needs.

Pratts seeks compensatory damages in an unspecified amount from defendants. He also seeks injunctive relief to remedy these allegedly unconstitutional practices.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[1]

---

[1] Plaintiff should also be aware that the PLRA requires Courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility,

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must assume the truth of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiffs. Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division, 411 F.3d 427, 431 (3d Cir. 2005). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

---

brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. If so, the prisoner is precluded from bringing an action in forma pauperis unless he or she is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). It appears that plaintiff has not incurred any strikes under 28 U.S.C. § 1915(g).

him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson, 293 F.3d at 106.

### III.  SECTION 1983 LIABILITY

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the claims asserted against the Hudson County Correctional Center are subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability.  See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976).  Accordingly, the Complaint will be dismissed in its entirety as against this defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV.   ANALYSIS

Turning to the remaining defendants, the Court liberally construes the allegations in the complaint as: (1) a § 1983

conditions of confinement claim in violation of the Fourteenth Amendment; (2) an interference with the legal mail claim; and (3) a denial of access to the courts claim.

A.   Conditions of Confinement Claim

Construing the allegations of the Complaint most liberally for the pro se plaintiff, as the Court is required to do on a sua sponte screening, it appears that the Complaint alleges a conditions of confinement claim and that the plaintiff was a pretrial detainee, at least at the time he initiated this action. Therefore, this claim should be examined under the Due Process Clause of the Fourteenth Amendment.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or State law. See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment. See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000). Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper

> inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute punishment, and therefore, did not violate the pretrial detainees' due process rights. Id., at 541-43. The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days. However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983). There, the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine

9

>privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

Here, plaintiff alleges that he has been forced to endure deprivations of the most basic human needs while incarcerated. Namely, unsafe water, unhealthy food, no heat in the winter, exposure to serious contagious diseases, and overcrowded and unsanitary conditions since May 2005. Eight months[2] would seem to be an extended period of time for endurance of these stated hardships and deprivations. Thus, if these allegations are true, the adverse conditions as alleged may be excessive in relation to their stated purpose, and defendants' alleged disregard for the health and public safety of the inmates at an overcrowded jail facility may imply that their non-action is intended as punishment, or at the least, a grossly inadequate response to a genuine public health and environmental concerns that serves no legitimate governmental purpose. See Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993); see also Hubbard v. Taylor, 399 F.3d 150, 158-63 (3d Cir. 2005). Therefore, the Court will allow this conditions claim to proceed at this time as against defendants, Director Aviles and Deputy Director Roberts.[3]

---

[2] Plaintiff has been confined at HCCC since August 14, 2005 and the Court received the Complaint on or about April 13, 2006.

[3] Generally, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.

---

See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate

B.   Interference with the Mail Claim

Next, plaintiff alleges that the HCCC does not honor certified mail, thereby circumscribing inmates' access to the courts.  Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted

---

> officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to this claim against these supervisory defendants, a liberal construction of the Complaint permits an inference on the part of these defendants to ignore, tolerate, or acquiesce in the alleged unconstitutional conditions at HCCC.  As this claim is likely to be fact intensive, the Court will permit said claim to proceed against these defendants.

only for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

    Here, plaintiff alleges a pattern or policy by HCCC officials in denying certified mail for no apparent penological purpose.  This allegation, although general, suggests that the HCCC officials are deliberately interfering with the inmates' legal mail, which is usually sent and received by certified mail.  Therefore, the Court will allow this claim to proceed past the initial screening stage.

C.   Inadequate Law Library Claim

    Finally, Pratts asserts that there are no paralegals or legal assistants at the HCCC law library to help inmates with legal research.  The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.

Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

    In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000).  But see United States v. Byrd, 208 F.3d 592,

593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); <u>United States v. Walker</u>, 129 F.3d 1266, 1997 WL 720385, \*\*4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See <u>Lewis</u>, 518 U.S. at 348-51, 354-55 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  <u>Lewis</u>, 518 U.S. at 351.

Here, Pratts fails to allege any actual injury as a result of the alleged non-existence of paralegals or legal assistants in the law library.  Moreover, it is clear that Pratts was able to file this Complaint without any allegations that his efforts to do so were encumbered in any way.  Therefore, plaintiff does not

show actual injury with respect to the general claim that he was denied access to the courts by the alleged failure of the HCCC officials to provide paralegals or legal assistants in the jail law library for the inmates' research needs. This claim will be dismissed without prejudice.

### V.  CONCLUSION

For the reasons stated above, the Court will dismiss without prejudice the plaintiff's § 1983 claim alleging that the defendants do not provide legal assistants to the inmates so as to infringe on their right of access to the courts. Further, the Complaint will be dismissed with prejudice, in its entirety, as against the Hudson County Correctional Center, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Finally, the remaining claims (the conditions of confinement claim and the interference with the legal mail claim), as against defendants Director Aviles and Deputy Director Roberts, will be allowed to proceed at this time. An appropriate Order follows.

Dated:    May 23, 2006

                                          s/ Joel A. Pisano
                                      **JOEL A. PISANO, U.S.D.J.**

Original: Clerk
cc:       Judge Arleo
          All Parties
          File